# CASES IN CHANCERY

## DELAWARE

In the matter of the Estate of ROBERT NELSON, deceased.

*New Castle, November 23, 1909.*

The testator died in 1854, giving his residuary estate, consisting of real and personal property, in trust for his wife for life, and directed that after her death all his estate should be converted, and directed that the fund should be divided "share and share alike between the children of my sisters, A., B., C., and the heirs and representatives of any such children who should have died between the time of my decease and the time of such division or distribution to be entitled to such share or shares as their respective ancestors would have been entitled to have received if living." The testator's wife died in 1908. At the death of the testator there were living nine nephews and nieces, children of his three named sisters, namely, three children of A., one of B., and five of C. One of the nephews, D., had four·children and died before the life tenant, leaving a widow still living and one child, who died before the life tenant, and the three other children of D., viz., J., K., and L., died before their father leaving children. One other of the nephews, E., had two children, and died before the life tenant, and one of his children, N., died in the life of her father and of the life tenant, leaving children, O., P. and Q., and R., the other child of E., is still living. One of the nieces of F. died before the life tenant and left a husband still living and three children still living. One other of the nieces, G., died before the life tenant and left three children still living. One other of the nieces, H., died leaving to survive her, as her next of kin and heir at law, her mother, who died before the life tenant. *Held:*

1. That each of the nine nephews and nieces living at the testator's death took then a vested remainder in one-ninth of the fund; the gift being to a class *per capita* and not *per stirpes.*

2. That the shares of the nephews and nieces who died before the life tenant did not pass to their respective executors or administrators, but passed by substitution to the heirs and representatives of nephews and nieces.

3. That the substitutional gift was to the next of kin of nephews and nieces; the words "heirs and representatives" being so construed.

4. That the interests of nephews and nieces dying before the life tenant were not devisable by them.

5. That the persons to take by substitution were to be ascertained as of the time of the death of each nephew or niece who died before the life tenant, and that the shares of such children of the nephews and nieces who died before their parents passed not to their (meaning the children's) executor or administrator, but to their (meaning children's) children, e. g., the share of I. was payable to her executor because she survived her father, D., and at his death was one of his "heirs and representatives," while the shares of J., K. and L., other children of D., who died before D., passed to their children, and not to their respective executors or administrators. So also the share of N., a child of nephew E., was divided between the three children of N., viz., O., P. and Q., N. having died before her father.

6. That because of the word "ancestor" in the will, the husbands or wives of the nephews or nieces were not entitled as "heirs and representatives" of their spouses who died before the life tenant, so that the husband of F. and the widow of D. were not entitled to a share of the fund.

7. That the share of the niece H. passed to her mother and was payable to the executor or administrator of her mother; the mother having survived her daughter, H., and died before the life tenant.

EXCEPTIONS TO THE REPORT OF AN AUDITOR appointed to ascertain the persons entitled to a legacy paid into the Court of Chancery. The facts sufficiently appear from the report of the Auditor, T. Bayard Heisel, Esq., which was as follows, a few unimportant formal parts and quotations from decisions being omitted:

"Upon the application of The Equitable Guarantee and Trust Company, administrator *d. b. n. c. t.a.* of Robert Nelson, deceased, the said administrator, on the 22nd day of March, A. D. 1909, was directed to pay into the Court of Chancery the sum

of $6,756.99, that being the amount in the hands of said administrator for distribution under the will of the said Robert Nelson, deceased, after the payment of costs of such application and order. That on the 7th day of April, A. D. 1909, upon the application of Sarah Staley, one of the persons entitled under the will of the said Robert Nelson, deceased, to a part of said sum for distribution, an order was made by Your Honor directing that notice by publication be made for the space of ten days following the granting of said order in the Every Evening, a newspaper published in the City of Wilmington, Del., directing all persons having any claim or interest in the money or fund belonging to the estate of Robert Nelson, deceased, and now on deposit to the credit of this Court in the Wilmington Savings Fund Society, at Wilmington, to file proof of their claim or claims thereto with T. Bayard Heisel, who was on the same day appointed by Your Honor Auditor to investigate and examine any and all claims that may be filed, in compliance with said order and to determine the relative priority, if any there be, of any person or persons with respect to said fund and the interest or share of such person or persons therein, and also to determine as to any other matter, whether of law or of fact, necessary to be determined in the premises, and make a report to the Chancellor subject to his approval and final decree thereupon, or to any further order or direction from him touching the same. * * *"

As matters of fact (about which there was no dispute) the Auditor found, as follows:

'That Robert Nelson made his last will and testament in writing, dated the 20th day of June, A. D. 1854, and died some time during that same month. That his will was probated and allowed by the Register of Wills in and for New Castle County, and State of Delaware, on the 3d day of July, A. D. 1854, and letters testamentary thereupon granted to William Chandler, the executor therein named. That the part of said will necessary to be construed in the matter now before the Auditor is as follows:

" 'Item. I give and bequeath unto my said wife, Margaret, all the rest and residue of my estate, real and personal, to hold the same to her during all the term of her natural life.

" 'Item. I direct that, after the decease of my said wife, Margaret, all my real estate be sold at public sale, in fee simple, and the net proceeds of the sale thereof, together with the residue of my personal estate then remaining shall be divided share and share alike between the children of my sisters, Hannah Thorn, Eliza Strawley and Ellen Crowell, and the heirs and representatives of any such children who shall have died between the time of my decease and the time of such division or distribution to be entitled to such share or shares as their respective ancestors would have been entitled to have received if living. Provided, however, and it is my will that the said sum of five hundred dollars bequeathed to .my said son, William Nelson, shall be paid to him on his arrival at twenty-one years of age out of the net proceeds of the sale of my real estate in New Castle Hundred, anything hereinbefore contained to the contrary in anywise notwithstanding.'

"That the said Margaret Nelson, wife of the said testator, survived him and died on the 27th day of September, A. D. 1908. That the said Hannah Thorn, one of the sisters of the testator, died in the year 1887, having been the mother of fifteen children, twelve of whom died in infancy and before the death of the testator, Robert Nelson, and leaving to survive her William Thorn, Robert Thorn and Hannah T. Schell. William Thorn died March 31, 1896, leaving five children, to wit: Margaret Bailey, Ellen Boggs, John Thorn, Robert Joseph Thorn and Hannah Huffnickle. The said Margaret Bailey survived her father and then died, having had four children: Lizzie, who died intestate and without issue; George W. Bailey, Jr., who is still living; Nellie Lutzenburg, who is still living; and Margaret Schmitt, who is still living. That Ellen Boggs, having survived her father, William Thorn, died intestate, leaving to survive her one child, Emma M. Boggs, who is still living. John Thorn died before his father, William Thorn, intestate and without issue. Robert Joseph Thorn survived his father, William Thorn, and died intestate, leaving to survive him as his heirs at law, William J. Thorn and Catharine Thorn, who are still living. Hannah Huffnickle survived her father, William Thorn, and died leaving to survive her three

children, William, Charles and John Huffnickle, who are still living.*

"The said William Thorn, son of Hannah Thorn, deceased, before his death made and published his last will and testament in writing, dated the 10th day of May, A. D. 1882, which said will was admitted to probate by the Register of Wills of Philadelphia County and State of Pennsylvania, on the 7th day of January, A. D. 1909, wherein the said William Thorn devised, as follows: 'Item. I give, devise and bequeath unto my beloved wife, Ellen Thorn, her heirs and assigns, all my property, real, personal and mixed, of whatever nature or kind and wheresoever the same shall be at the time of my decease. And I do nominate and appoint my wife, Ellen Thorn, executrix of this my last will and testament.' That letters testamentary were duly issued to the said Ellen Thorn as the sole executrix named in said will. Said will being marked 'Exhibit No. 4.' Robert Thorn, son of Hannah Thorn, having survived his mother, died October 9th, 1889, having had three children: Sarah MacMullen, who is still living; William Thorn, who died in infancy, intestate and without issue; and Kate McNeal, who died in 1886, having had four children; Lizzie McNeal Murray, Robert McNeal and Ellie McNeal, who are still living, and one other child who died in infancy, intestate, unmarried and without issue. Hannah T. Schell, a daughter of the said Hannah Thorn, is still living. That Eliza Strawley, one of the sisters of the said testator, Robert Nelson, died in the year 1878, having had one child Elizabeth Barnholdt, by a former husband, and that the said Elizabeth Barnholdt died during the year 1856, not married and without issue. That the said Eliza Strawley, after the death of her second husband, married——Callahan, now deceased, and on the 11th day of January, A. D. 1878, made her last will and testament in writing, which said will was duly probated and allowed by the Register of Wills in the County of Philadelphia and State of

*The error of the Auditor in finding that Ellen Boggs, Robert Joseph Thorn and Hannah Huffnickle survived their father, William Thorn, was cured by agreement of counsel.

Pennsylvania, on the 13th day of June, A. D. 1878, wherein she provided, as follows: 'All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever situated, that I may die seized and possessed of, or entitled to, at the time of my death, I give, devise and bequeath unto my beloved nephew, William Thorn, his heirs, executors and assigns.' Said will being marked 'Exhibit No. 3.' Ellen Colwell, one of the sisters of the said testator, Robert Nelson, who was called in the will of Robert Nelson 'Ellen Crowell,' died in 1894, having had six children, to wit: Sarah Staley, Emma Lackey and Theodore Colwell, all of whom are still living; and Hannah, about whom the testimony is doubtful as to the time of her birth or death, but certain that she died intestate, unmarried, and without issue; and Elizabeth Winterbottom, who died in the year 1892, leaving to survive her her husband, William, and three children, John Winterbottom, William Winterbottom and Percy Winterbottom, all of whom are still living; and Mary Chidester, the other child of the said Ellen Colwell, died during the year 1878, leaving to survive her three children: Ellen Royer, William F. Chidester and Samuel Chidester, all of whom are still living.

"It was admitted by the solicitors for all the claimants that the testator, Robert Nelson, made a conversion of his real estate into personalty by the terms of his will, and that the fund in the hands of the Court for distribution should be distributed among those entitled as personal property.

"There remain then but two questions of law to be decided by the Auditor: (1) Do the children of Hannah Thorn, Eliza Strawley and Ellen Crowell, who were living at the time of the death of the testator, take the fund *per capita* or *per stirpes;* or, in other words, should the fund be divided into three parts, and the children of the sisters of the testator take in their representative capacity and *per stirpes*, or should they take as the direct legatees under the will and *per capita?* (2) Was the bequest to the children of the three sisters of the testator a vested legacy, or was it intended as a substitutionary devise or a devise over?

"As to the first question, the Auditor finds that the fund should be divided *per capita* among the children of Hannah Thorn, Eliza Strawley and Ellen Crowell, the three sisters of the testator, and not as the representatives of their respective mothers, but as the direct legatees under the will. Upon this question the solicitors for Ellen Thorn have filed an interesting and instructive brief containing many well-considered cases in other states, but have cited no case in this State supporting their contention for a division *per stirpes*. It seems to the Auditor that the case of *Kean's Lessee v. Roe & Hoffecker, 2 Harr*. 103, is conclusive of this question in this State, nor has he been able to find any other case in this State modifying the law as therein expressed. In that case the language of the will to be considered was:

"'But if it shall consist of the one-third part, then the said third part to be equally divided between my sister Elizabeth and my said nephews and nieces, their heirs and assigns forever, as tenants in common, and not as joint tenants. * * *'

"The Auditor can see no difference between the words in the case of *Kean's Lessee*, 'to be equally divided between,' and the words in the will of Robert Nelson, 'to be divided share and share alike between;' nor is there anything else in the will to indicate an intention on the part of the testator to make his three sisters the stock through whom their respective children should take. In the opinion of the Auditor, the testator would not have made his intention any clearer to divide his estate amongst his nephews and nieces *per capita* had he named them individually.

"As to the second question of law, the auditor finds that the children of the testator's three sisters, who were living at the death of the testator, had a vested legacy, and that the fund, being divided as personal property, the share or shares of any child or children who have died since the death of the testator go to his or her personal representative. It was contended by the solicitors for some of the claimants that the bequest in question would be a vested legacy if the clause, 'and the heirs and representatives of any such children who shall have

died between the time of my decease and the time of such division or distribution to be entitled to such share or shares as their respective ancestors would have been entitled to have received if living,' had been omitted from the will; and that therefore, by inserting said clause, the testator must have intended to make a devise over to the children living at the time of the distribution. This, in the opinion of the Auditor, does not necessarily follow, because the testator might have intended by the clause above quoted to prevent any question arising as to the legacy lapsing or of the claim of survivorship by the children of his three sisters. But, whatever he may have meant, what he did in said clause was to describe in detail the exact course the law would have taken had he not put in his will that clause, because without it, under the law in this State as decided by the cases hereinafter cited, upon the death of any of the children of his three sisters, after the death of the testator and before the time of distribution, the fund, if considered as real estate, would have gone to the heirs of such deceased children, and, if considered as personal property, to their representatives, and the children of such deceased children would have been entitled to such share or shares as their respective ancestors would have taken if living. If, then, without the clause in question, the testator gave a vested legacy to the children of his three sisters, the Auditor is unable to see how, by describing in detail the course of the vested legacy, in the event of the death of the children of any of his three sisters before the time of distribution, the testator intended to create, not what he had so accurately described, but something entirely different; that is a substitutionary devise or a devise over.

"In the case of *Conwell's Adm'r. v. Heavilo's Adm'r.*, 5 *Harr.* 296, the testator bequeathed to the three children of Conwell, 'at the marriage or decease of his sister Susan, each three hundred dollars.' One of the children died after the testator and before the marriage or death of the testator's sister. Booth, C. J., said:

" 'When a legacy is directed to be paid at a future time, or on a future event, it is vested or contingent, according to the intent and mean-

ing of the testator, as expressed in his will. If the time or event is annexed to the payment of the legacy, it is vested, and if to the substance or gift of the legacy, it is contingent, because such appears to be the intention of the testator. Therefore, if a legacy be given to a person, payable, or to be paid, at or when he shall attain the age of 21 years, or at or upon any other definite period or event, the legacy becomes vested immediately on the testator's death, and is transmissible to the executors or administrators of the legatee, although he died before the time of payment. * * * The bequests of the legacies and the residue are in the nature of remainders, and become vested interests, as well as the life estate of Susan Morris, immediately upon the death of the testator. Therefore the legacy of $300 bequeathed to Elias Conwell was not defeated by his dying after the testator and in the lifetime of Susan Morris, but goes to the plaintiff, James M. Carey, as the administrator of said Elias Conwell deceased.'

"In the case of *Rubencane v. McKee*, 6 *Del. Ch.* 40, 6 *Atl.* 639, the testator bequeathed $1,200 to R. in trust to pay the interest to T. during her life, and from and immediately after her decease to pay the said principal sum of $1,200 to the child or children of the said T. T. had two children. One was born before the death of the testator, and one afterwards. Both died prior to the death of T., the life tenant. The Chancellor cited with approval the case of *Conwell's Adm'r. v. Heavilo's Adm'r.*, 5 *Harr.* 296, and directed the trustee to pay the legacy to the administrator of the children of T., although she survived her children, because their interests under the will were vested during their lives.

"It would seem, therefore, to be settled in this State that, had Robert Nelson omitted from his will the clause, 'and the heirs and representatives of any such children,' etc., the children of his three sisters would have taken a vested legacy. How then is it possible, by the addition of a clause that describes the course the law would pursue without it, to construe that clause to mean just the contrary? Nor is said clause meaningless or superfluous if construed as describing a vested legacy if we take into consideration the time the will was made. The will of Robert Nelson was dated June 20th, 1854. The case of *Conwell's Adm'r. v. Heavilo's Adm'r.* was decided at the June term, 1850, but was not reported until 1856, two years after

the date of Robert Nelson's will. The case of *Rubencane v. McKee* was decided in 1886. So that, while one of these cases was decided before the date of the Nelson will, it was not reported until two years after, while the other case was decided long after the date of the will. This seems to the Auditor to have some bearing on the construction of the clause in question, because the addition of said clause would have removed beyond all doubt the question of the legacy lapsing in the event of the death of any of the children after the death of the testator and before the time of the distribution (which was one of the questions in both the cases above cited), and would also remove any question of survivorship amongst them; and the testator might well have intended by describing a vested legacy to avoid the possibility of those two questions arising. In any expression of words used by the testator in an endeavor to prevent those two questions from arising, the words 'heirs,' 'representatives,' 'ancestors,' or similar words, must of necessity appear; and when they do appear, if it is in such manner as to describe a definite legal estate, then the rule of law is to construe them to mean such an estate, unless by the will some other intention is clearly shown. In the Nelson will there is nothing outside of the clause in question bearing on the intention of the testator as to this legacy.

"Therefore, for the reasons above stated, and without citing or reviewing the numerous cases outside of this State examined by the Auditor bearing on the clause in question and supporting the construction given it by him, he respectfully reports that he is of opinion that, after the payment of the costs of these proceedings, the said fund now in the hands of the Court for distribution should be divided into nine equal parts, and that one of such parts should go to each of the following persons: Hannah T. Schell; Sarah Staley; Emma Lackey; Theodore Colwell; Ellen Thorn, executrix of William Thorn, deceased; the administrator of Elizabeth Barnholdt; the administrator of Robert Thorn; the administrator of Elizabeth Winterbottom; and the administrator of Mary Chidester."

Thereupon exceptions to the Auditor's report were filed as follows:

William Huffnickle, Charles Huffnickle, John Huffnickle, Hannah T. Schell, Sarah MacMullen, Lizzie McNeal Murray, Robert McNeal and Ellie McNeal filed the following exceptions:

"(1) The Auditor erred in finding that Elizabeth Barnholdt took a vested estate or interest in one-ninth part of the estate of Robert Nelson, deceased. (2) The Auditor erred in finding that Elizabeth Barnholdt took an interest in said estate, which passed upon her death to her mother, Eliza Callahan (formerly Strawley), and thence under the will of said Eliza Callahan. (3) The Auditor erred in not finding that the testator's direction as to his residuary estate is substitutionary in character, and that Elizabeth Barnholdt, daughter of Eliza Strawley, having died during the continuance of the life estate, her interest ceased, and the remaining children of the testator's three sisters named in his will and the issue of such as had died leaving children took the whole estate. (4) The Auditor erred in finding that one-ninth of the said estate should be paid to the executrix of William Thorn, deceased, instead of to his grandchildren."

Ellen Thorn, another one of the parties entitled to share in the distribution of said fund, excepted to the Auditor's report, as follows:

"First. To so much of said report as is included in the first finding of said Auditor, viz.: That the fund should be divided *per capita* among the children of Hannah Thorn, Eliza Strawley and Ellen Crowell, the three sisters of the testator, and not as the representatives of their respective mothers, but as the direct legatees under the will. Second. To so much of said report as is included in the conclusion of said Auditor, viz.: That he is of the opinion that, after the payment of the costs of these proceedings, the said fund now in the hands of the Court for distribution should be divided into nine equal parts, and that one of such parts should go to each of the following persons: Hannah T. Schell; Sarah Staley; Emma Lackey; Theodore Colwell; Ellen Thorn, executrix of William Thorn, deceased; the administrator of Elizabeth Barnholdt; the administrator of Robert Thorn; the administrator of Elizabeth Winterbottom; and the administrator of Mary Chidester."

Sarah Staley, Emma Lackey, Theodore Colwell, Samuel Chidester, William F. Chidester, Ella Royer, Samuel Winterbottom, John Winterbottom and Percy Winterbottom, also being entitled to share in the distribution of said fund, excepted to the report of the Auditor as follows:

"(1) The learned Auditor erred in finding that Elizabeth Barnholdt took a vested estate or interest in one-ninth part of said estate. (2) The learned Auditor erred in finding that Elizabeth Barnholdt took an interest in said estate which passed upon her death to her mother, Eliza Callahan (formerly Strawley), and thence under the will of said Eliza Callahan. (3) The learned Auditor erred in not finding that the testator's direction sa to his residuary estate is substitutionary in character, and that Elizabeth Barnholdt, daughter of Eliza Strawley, having died during the life estate, her interest ceased, and the gift was narrowed down to the remaining children of the three sisters of testator named in his will, and the issue of such as had died leaving children."

At the hearing of the above exceptions before the Chancellor, counsel for the above-named Sarah Staley, Emma Lackey, and others took oral exceptions to the report of the Auditor wherein he (the Auditor) awarded one-ninth to the administrator of Mary Chidester and one-ninth to the administrator of Elizabeth Winterbottom, instead of awarding their shares direct to their representatives.

*James W. Lattomus and Willis B. Heidinger*, for Sarah Staley Emma Lackey, Theodore Colwell, Samuel Chidester, William F. Chidester, Ella Royer, Samuel Winterbottom, John Winterbottom and Percy Winterbottom, contended that the fund to be distributed under the will of Robert Nelson should be divided *per capita* amongst the children of Hannah Thorn, Eliza Strawley and Ellen Crowell, the sisters of the testator, Robert Nelson, and that the words "heirs and representatives" in said will made it a substitutionary devise, or a devise over, and not a vested legacy, and that the fund should be divided amongst the children of Robert Nelson's three sisters living at the time of the death of his wife, Margaret Nelson, and that the heirs of the deceased children of the sisters of the testator, Robert Nelson,

living at the death of the said Margaret Nelson, should take the part or share their ancestor would have taken if living; or, in other words, that the persons who should take were not ascertained until the death of Margaret Nelson, the wife of Robert Nelson, who had a life interest in the property out of which the fund for distribution was raised.

*J. Frank Ball and Thomas D. McGlathery* for Ellen Thorn, contended, (1) That the testator, Robert Nelson, directed and made a conversion of his real estate into personalty, and that it is therefore to be distributed amongst those entitled as personal property. (2) That the children of the three sisters of the testator named in his will, who were living at the time of his decease and at the date of his will, took a vested estate immediately upon his decease which was subject of attachment, alienation, bequest and descent. (3) That the clause in the will of the said testator referring to the heirs and representatives of any such children who should die between the time of his death and the time of distribution was not intended as a substitutionary devise or as a devise over, but was intended by the testator to prevent an intestacy or the right of survivorship amongst the children of his sisters in each class. (4) That the distribution should be *per stirpes* and not *per capita;* the testator selecting each one of his three sisters as the stock or branch of a separate class and directing that the distribution should be share and share alike between the children of each class.

The contention of *Hugh M. Morris*, for Margaret Bailey's administrator, and *Christopher L. Ward,* for William Huffnickle, Charles Huffnickle, Hannah T. Schell, Sarah MacMullen, Lizzie McNeal Murray, Robert McNeal and Ellie McNeal, is included in the two contentions above stated; Mr. Ward and Mr. Morris contending that the fund should be divided *per stirpes,* or in three parts, one part each to be again divided amongst the respective heirs of Hannah Thorn, Eliza Strawley and Ellen Crowell, and that said devise was not a vested legacy, but a substitutionary devise, or a devise over, and that the person or persons entitled thereto could not be ascertained until the death of the life tenant, Margaret Nelson.

THE CHANCELLOR: The facts in this cause sufficiently appear in the report of the learned Auditor, with some of whose conclusions the Court agrees, differing as to others. By his will probated in 1854, Robert Nelson, the testator, gave the residue of his estate to his wife, Margaret, for life, and then provided as follows:

"Item. I direct that after the decease of my said wife Margaret, all my real estate be sold at public sale in fee simple and the net proceeds of the sale thereof, together with the residue of my personal estate then remaining, shall be divided share and share alike between the children of my sisters, Hannah Thorn, Eliza Strawley, and Ellen Crowell, and the heirs and representatives of any such children who shall have died between the time of my decease and the time of such division or distribution to be entitled to such share or shares as their respective ancestors would have been entitled to have received if living."

His wife survived him and lived until September 27th, 1908. After her death, the administrator *d. b. n. c. t. a.* of Robert Nelson converted the property, real and personal, of the testator into money, and, being unable to acsertain the persons entitled, by authority of the Chancellor paid into Court the residuary estate of Robert Nelson and the parties claiming to be entitled have made their claims before the Auditor appointed for the purpose.

Without restating all the various contentions of the exceptants, which the Auditor has done in his report, the Court states the conclusions reached on the questions raised. At the death of the testator in 1854, there were living nine nephews and nieces of the testator, children of his three sisters, Hannah Thorn, Eliza Strawley and Ellen Colwell (called in the will Ellen Crowell), viz., three children of Hannah Thorn, one of Eliza Strawley and five of Ellen Colwell. Of these nine nephews and nieces only four survived the life tenant and are still living, viz., Hannah T. Schell, Sarah Staley, Emma Lackey and Theodore Colwell. One other nephew, Robert Thorn, had three children; one of them, William, died before his father without children; and another of them, Catharine McNeal, died before her father leaving three children; and the other of them, Sarah MacMullen, is still living. One other niece, Elizabeth Winter-

bottom, left a husband, who is still living, and three chileren still living. Another niece, Mary Chidester, left three children still living. One other niece, Elizabeth Barnholdt, was unmarried, left no children, or issue of deceased children, brother or sister, or issue of deceased brother or sister, or father, but her mother, Eliza Callahan, since deceased. One other nephew, William Thorn, had five children; one of them, John Thorn, died before his father, leaving no children; and another of them, Robert Joseph Thorn, died before his father leaving two children now living. The Auditor found that the three children of William Thorn, namely, Margaret Bailey, Ellen Boggs and Hannah Huffnickle, survived their father; but this is not the fact as to Ellen Boggs and Hannah Huffnickle, as appears by an agreement of counsel appearing for all the claimants. Ellen Boggs died before her father, William Thorn, leaving her husband, now living, and one child who is still living. Hannah Huffnickle also died before her father, William Thorn, leaving three children. who are still living.

The conclusion of the Auditor that there was an equitable conversion by the terms of the will is correct, and as a consequence the subject-matter of the gift was personalty. There is no contention among the parties on this question. *In re Stevenson's Estate*, 2 *Del. Ch.* 197.

The first question was as to the shares taken by the nine nephews and nieces, viz.: Whether the fund should be divided into three equal parts, one of them to be sub-divided between the three children of Hannah Thorn, one to Elizabeth Barnholdt, and the other to be subdivided between the five children of Ellen Colwell; or whether the nine nephews and nieces constituted a class of nine, and the fund should be divided into nine primary shares. In other words, was the gift to the children of the sisters one *per stirpes* or *per capita*. The Auditor found that the latter conclusion was the right one, and in this the Court agrees. Whatever may be the decision of courts elsewhere, the decision of the Court of Errors and Appeals in *Kean's Lessee v. Roe*, 2 *Harr.* 103, (1836) if applicable to the facts before this Court, is controlling. and that decision does clearly apply to the construction of Nelson's will. The case was heard in the Court

of Errors and Appeals upon a case stated reserved by the Superior Court, and was an action of ejectment brought by Matthew Kean to try the title to his share of the estate of Thomas J. McComb. By his will, made in 1813, Thomas J. McComb (omitting the irrelevant parts) gave to his brother James B. McComb one-third of his real estate for life, and then provided, as follows: "And upon his death to determine and go over as an executory devise in the manner following, that is to say, * * * the said third part to be equally divided between my sister Elizabeth and my said nephews and nieces, their heirs and assigns forever, as tenants in common, and not as joint tenants." By prior portions of his will he had mentioned certain nephews and nieces by name, viz., Joshua, Elizabeth, Jennet and Henry Clayton, children of a deceased sister, so that the words quoted above, "said nephews and nieces," necessarily meant these four named children of his deceased sister. The testator died in 1813 and left to survive him his brother, James B. McComb, his sister, Elizabeth, and the four nephews and nieces above named. Elizabeth, the testator's sister, married Matthew Kean in the lifetime of James B. McComb, and had two children by him, Thomas and James M. Kean, and died in 1818 intestate, leaving to survive her her said husband and said two children, the two children being her only heirs at law. Both the children of Elizabeth Kean died in 1831 intestate, unmarried and without issue, their father, Matthew Kean, being alive. In 1832 James B. McComb died intestate and without issue. At his death there were living Matthew Kean and ,Joshua, Elizabeth and Jennet Clayton; Henry Clayton, the other named nephew of the testator, having theretofore died intestate, unmarried and without issue. The question considered was whether Matthew Kean, upon the death of James B. McComb, became entitled to any and what interest in the real estate devised by Thomas J. McComb as above stated. *Held:* That Matthew Kean took and became entitled in and to an undivided one-fifth part or share of and in one-third part of the real estate, viz., one-fifth of the one-third part in which James B. McComb had a life estate. This result was obtained thus: (1) On the death of Elizabeth Kean, her contingent right or interest in the one-

third devised to James B. McComb for life descended to her heirs at law, her two children, she having died intestate; that, on the death of one of the Kean children intestate and without issue, its entire interest passed to the child's surviving brother; that upon the death of the surviving Kean child, intestate, unmarried and without issue, its interest passed according to the statute of descent in Delaware to its father, Matthew Kean; that thereby Matthew Kean acquired all the title and interest given by way of executory devise to his wife in one-third of the land; and that when subsequently the contingency happened, viz., the termination of the life estate of James B. Mc Comb, then Matthew Kean had a legal right to claim as heir to his last surviving child such share of that one-third as his wife, if living, would have been entitled to.   (2) The share of Elizabeth Kean was determined to be one-fifth of the one-third given to James B. McComb for life, she and her four named nephews and nieces sharing equally, that is, each one-fifth, they taking *per capita* and not *per stirpes*.

Respecting this second branch of that case, which bears on the first question considered by this Court, the Court there held that the gift to the nephews and nieces by name, as, "to my nephews and nieces, A., B., C. and D.," was a gift of equal shares to them *per capita*.   In this respect the facts were different from the Nelson will case, where the gift was to a class or classes, *i. e.*, to the children of A., B., and C., and if there were nothing else in the case it would not control the case under consideration.   But the Court there applied another well-settled rule of construction to the words, "to be equally divided," in McComb's will, and held these words also established a gift *per capita*, and the rule was thus stated: "The settled legal construction of the words, *equally to be divided*, when used in a will is to cause an equal division of the property *per capita* and not *per stirpes*, whether the devisees be children or grandchildren, brothers or sisters and nephews and nieces, or strangers in blood to the testator."   In support of its conclusion the Court cited several authorities directly in point, and refused to unsettle what it considered an established doctrine, and adopted a settled

legal interpretation of the language used by the testator in that case, whatever his actual intention might have been.

There is, it is true, a difference in the language used in the McComb will and in that of Nelson, though in each there was a life estate preceeding the gifts in question which were in remainder. In the former the gift in remainder was "to be equally divided between my sister Elizabeth and my said nephews and nieces;" the word "said" referring to a prior naming of the nephews and nieces. In the latter the gift in remainder was, the estate "shall be divided share and share alike between the children of my sisters, Hannah Thorn, Eliza Strawley and Ellen Crowell." The Auditor found and this Court has found, no difference in principle between the two forms of expression. The words "to be divided equally" seem the exact equivalent of words directing that something "shall be divided share and share alike." Any other conclusion would seem a quibble of words. In each, equality of share and interest is the intention. It could not be divided share and share alike without giving each the same, or like share, as the others. Another difference between the McComb and Nelson wills was that the beneficiaries in the former were "nephews and nieces" of the testator, and in the latter "children of my sisters," A.,B. and C. No inference of the intention of the testator Nelson can be drawn from the gift to children of sisters, meaning *ex vi termini* nephews and nieces, different from a gift to "nephews and nieces," who must be children of sisters. No cases were submitted, or have been found, or satisfactory reason given to this Court, to clearly indicate a real and controlling difference in principle between the legal effect of the language of the testators McComb and Nelson, and the decision of the Court in construing the former therefore controls this Court in construing the latter. It is well settled, too, as found by the Auditor, that those nine nephews and nieces of the testator living at the death of the testator, being children of the three named sisters of the testator, took vested estates and interests in the property bequeathed, each taking an undivided one-ninth share, subject to the life estate of the widow of the testator. These shares were subject to be diminished by additions to the

class, viz., nephews and nieces of the testator, children born to the three named sisters after the death of the testator and in the life of the life tenant. But in this case there were no such additions to the class. *Kibler's Adm'r. v. Whiteman*, 2 *Harr.* 401; *Conwell's Adm'r. v. Heavilo's Adm'r.*, 5 *Harr.* 296; *Rubencane v. McKee*, 6 *Del. Ch.* 40, 6 *Atl.* 639; *In re George Stevenson's Trusts*, 2 *Del. Ch.* 197; *Doe v. Girard*, 1 *Houst.* 276, 287. The cases show that the Auditor was right in his conclusion that, but for the substitutionary clause in the Nelson will, the decisions above noted would control the interpretation of the Nelson will and lead to a conclusion that the estate should be divided into nine equal parts, and one part be payable to each of the nine nephews and nieces, the heirs and representatives of such of them as were dead at the death of the life tenant taking the shares of the one or more so dying.

The second question considered was the destination of the shares of those of the nine nephews and nieces who died in the life of the life tenant. The learned Auditor treated these shares as vested interests, which was correct, and concluded that therefore, at the death of either of the nephews or nieces before the life tenant, that share passed to the executor or administrator of the one so dying. In this latter conclusion this Court holds that he erred, and that the substitutional clause effected a different result. The learned Auditor, for whose opinion I have respect, concludes that the substitutionary clause was precautionary to prevent a lapse, the person who drafted the will of Robert Nelson dated in 1854 not having had the benefit of the decision on the Heavilo will, which, though decided in 1850, was not reported until 1856, and of the McKnight will, which was not decided until 1886. But it should be noted that in the *Heavilo Will Case* the Court only applied rules of law theretofore well settled; and further, it could very well be argued that if the law was so settled, as above stated, then there must have been some reason for the gift by way of substitution other than that it was necessary for the purpose of preventing a lapse of the share of a legatee who survived the testator and died in the life of the life tenant. Without the substitutionary clause the shares of the nephews and nieces alive at the death of the testator and dying in

life of the life tenant would have been devisable or assignable by such nephews or nieces in their lifetime,and at their death would go to their executors or administrators, as the case may be. The Auditor says the substitutionary clause has the same effect. Then what reason was there for the clause? Some further reason for it must be found. The gift to "heirs and representatives" of those nephews and nieces who should die after the death of the testator and in life of the life tenant was not surplusage, or used to prevent survivorship among the nephews and nieces, or to prevent a lapse. Each child of the three named sisters of the testator living at the death of the testator took a vested interest in remainder, and, if there had been no substitutional clause, the share of any one dying in the life of the life tenant would belong to his executor or administrator. Distinct authorities in Delaware for this are: *Conwell v. Heavilo,* 5 *Harr.* 296; *Kibler's Adm'r. v. Whiteman,* 2 *Harr.* 401. So too, any child of either of the three named sisters of the testator who died in the life of the testator would be excluded from the class. See *Rubencane v. McKee,* 6 *Del. Ch.* 40, 6 *Atl.* 639.

This Court concludes that the share of any of the nine nephews and nieces who died in the life of the life tenant passed because of the substitutional clause to such persons, as on a proper construction of the words "heirs and representatives" would be so entitled, in view of the character of the subject-matter of the gift. That there was in the will a substitution of their "heirs and representatives "for those nephews and nieces who survived the testator and died in the life of the life tenant is so clear that it need not be further elborated. This is demonstrated when the words of the will are paraphrased so as to read thus: I give all my estate to my wife for life, and at her death to be equally divided between the children of my three sisters, A., B. and C., and in case any of such children shall die between the time of my decease and the time of such division or distribution, I give to the heirs and representatives of such children so dying, such share or shares as their respective ancestors would have been entitled to have received if living. This is a clear case,therefore, of substitution by the testator of "heirs and representatives" for nephews and nieces who sur-

vive the testator and die before the life tenant, and no authorities need be cited to fortify this plainly indicated result. The effect of such a substitutional clause is considered in the latter part of this opinion.

The third question was to the persons who answer the description of "heirs and representatives," considering the subject-matter of the gift to be personal property. In view of the similarity of the Delaware statutes of descent and distribution, it is perhaps unimportant to discuss this branch at length, for under the facts of this case the same persons would take whichever statute is applied. If the word "heirs" means strictly heirs at law, viz., those who under the Delaware statute of descents take the interest of deceased nephews and nieces, the same persons would take as distributees. As appears later in this opinion, the word "heirs" must mean the same persons as "representatives," they being used together, so that the same result is obtained. Even the word "heirs," when used in a substitutional gift concerning personalty, is held to mean distributees, i. e., the persons entitled to the personal estate of the deceased legatee for whom substitution is made. The rule seems to be so well settled that reference need only be made to the authority of *Hawkins on Wills*, § 92, and cases there cited:

"A bequest of personal estate to 'A. or his heirs' is construed as a gift by way of substitution to the heirs in the event of the death of A. before the period of distribution. And the word 'heirs' is held to mean the persons who would be entitled to the personal estate of A. by virtue of the statute of distribution if he had died intestate. The rule applies whether the gift be immediate as to A. or his heirs, or in remainder, as to A. for life and after his decease to B. or his heirs. And the rule applies if the gift be to several, as to A. and B. or their heirs, or to a class, as to the children of A. or their heirs."

It does not seem necessary to refer to the many cases cited by this master hand at formulating rules for the construction of wills, and cited by counsel here in their briefs. The above-stated rule is well established and applicable here. Moreover, there is in the will ample evidence that the intention of the testator was in accord with the rule. The word "representatives"

must mean the same as heirs, and, being used with the word "heirs," should be held, like the latter, in this substitutional gift to mean next of kin or distributees. Taken by itself, the word "representative" *prima facie* means executor or administrator. *Hawkins on Wills*, 107. But the learned author says that the rule is not a strong one and esaily yields where the will indicates a different intention. In Robert Nelson's will there is expressed a clear intention that by "representatives" he meant next of kin or distributees, and not executors. (1) Being used with "heirs," it means the same as "heirs," which means next of kin or distributees. (2) It could not mean "executors," for this the substitutional gift would be to distributees and executors—a manifestly impossible conclusion. (3) By the use of the word "ancestors," executors are excluded, for the "representatives" of deceased nephews and nieces are to take the shares which their "ancestors" would have taken if living, and a decedent is not an ancestor of an executor; the word "ancestor" importing blood relationship or kinship, and not an official relationship only.

The fourth question considered was whether the shares of the nephews or nieces were devisable. No evidence is given of any attempt by any of them to assign their interests, but one of them, William Thorn, who died in the life of the life tenant, made a will containing a general residuary devise without any reference to any interest in the estate of his uncle, Robert Nelson. The general rule as to the devisability of future interests was considered in this State in the cases of *Kean's Lessee v. Roe*, heretofore cited, and *Gray v. Corbit*, 4 *Del. Ch.* 135, and 4 *Del. Ch.* 357, and in the United States District Court for the District of Delaware in the case of *In re Twaddell (D. C. of Del.)* 110 *Fed.* 145, a decision of the present Judge Bradford. In all three it was held that all vested and contingent remainders, and all executory devises and all possibilities coupled with an interest, where the person to take is certain, may be assigned or devised and are transmissible to the representatives of the devisee if he die before the contingency happens, and when the contingency does happen they vest in the representatives of the real or personal

estate as the case may be; otherwise if the object of the limitation over is not ascertained or fixed, or the persons to whom the estate is to pass are not ascertained until the contingency does happen. In the case of *Kean's Lessee v. Roe*, the Court thus states the rule:

"Contingent as well as vested interests in either real or personal estate, and also executory devises, and all possibilities coupled with an interest, where the person to take is certain, may be assigned or devised, and are transmissible to the representatives of the devisee, if he dies before the contingency happens; and when the contingency does happen, they vest in the representative of the real or personal estate as the case may be. It is otherwise, if the object of the limitation over is not ascertained or fixed; or the persons to whom the estate is to pass are not ascertainable until the contingency does happen; as in the case of a limitation to the right heirs of a living person; for during the life of such person, it cannot be known who his heirs will be, nor in whom the interest is."

But in neither of these cases was there a substitutionary gift under consideration, and this difference between them and the case at bar is fundamental and leads to different results. It is one of the necessary and logical features of a substitutional gift that the first taker cannot by devising or assigning his interest before the contingency happens cut out his substitute, who takes not through or from the first taker, but in his place and from the testator directly. Nephews and nieces who survived the testator and died before the life tenant dropped out entirely, and their "heirs and representatives" respectively took their places. Inasmuch as the shares of nephews and nieces dying before the life tenant were divested, they had no power of disposition by will. The foregoing is not only the reasonable but also the established rule. Of many cases that might be cited, the following will suffice: In *Hewey v. McLaughlin*, 1 *Price* 264, there was a bequest of personal estate to A. for life, with remainder to her three children in equal shares, and, in case of the death of either or any of them, the share of those so dying to go to their children. It was held to be a vested interest subject to be divested if either of the legatees in remainder died during the life of the particular tenant, and that in such event his share

became the property of his children and not of his personal representative. In *Lyons v. Ostrander*, 167 *N. Y.* 135, 60 *N. E.* 334, there was a gift to trustees to pay income to the testator's adopted son for life with remainder in fee to his wife and children "share and share alike, the issue of such as may have died to take the share to which her or their parents would if living have been entitled." One of the persons entitled in remainder died before the life tenant. *Held*, her share was divested and not vested in her issue, and that her share did not pass under her will. In *Shaw v. Eckley*, 169 *Mass.* 119, 47 *N. E.* 609, property was given in trust, the net income to sons for life and on the decease of his son D. the principal should be paid to D's. son if D., Jr., be living, and if dead to the testator's daughter and his other sons to be equally divided among them, "the issue of a deceased child, other than the issue if any of my said son D. taking their parents' share by right of representation." D., Jr., died in the life of his father. *Held*, that the interests of the sons and daughters of the testatrix other than D. in remainder after the life estate vested at the death of testatrix, and not at the death of the grandson D.; also, that the interest of a child that died before the interest vested in possession passed to his or her issue. The substitutional clause was held to mean that the interest of a son or daughter should determine or be divested in favor of issue in case of his or her decease, leaving issue, before the remainder vested in possession; and that the death of D., Jr., was not the date at which the remainder would vest in interest or in possession. The only change which occurred at that time was that the remainder, which before was contingent, became absolute in the daughter and other sons of the testator, subject only to be divested in the case of any of them who should die leaving issue before it was vested in possession. Other authorities in point are *Flannagan v. Staples*, 28 *App. Div.* (*N. Y.*) 319, 51 *N. Y. Supp.* 10; *Hutchinson v. Exton*, 53 *N. J. Eq.* 688, 32 *Atl.* 682, 35 *Atl.* 1130.

The fifth question considered was when the persons to constitute the class of "heirs and representatives" of nephews and nieces dying before the life tenant was to be ascertained. The question is important, for it must be determined, for in-

stance, whether Elizabeth Barnholdt's share, which under the conclusion hereinbefore stated passed to her mother, Eliza Callahan, passed on to Eliza Callahan's next of kin or distributees, or to the executor under her will. So also as to the shares of William Thorn and Robert Thorn, both of whom left grandchildren, living at his death, children of deceased children, and the the question to be settled is whether the interest of the children of William Thorn belongs to their executors or administrators or was passed on to the grandchildren of William Thorn. The general rule is that under a substitutional bequest to the "heirs," "next of kin," "relatives," etc., the persons to take are to be ascertained at the death of the persons whose "heirs," "next of kin," etc., are spoken of, and not at the period of distribution. *Hawkins on Wills*, 94, 99, 104. Hawkins applies the principle to a concrete case, thus: "If the gift be to B. for life, remainder to A., or his heirs, and A. dies in the lifetime of B., the persons to take are those who would be entitled to the personal estate of A., by virtue of the statute of distribution at his death and not at the death of B." This rule is therefore applicable to all cases of substitutional gifts. When, however, the language of the will is such as to show that the testator intended the next of kin to be ascertained at the period of distribution, the intent will control. For instance, if there be a gift to B. for life and at his death to the persons who shall then be the next of kin of A., the next of kin of A. were to be ascetrained as at the period of distribution, i. e., the death of B. The case of *Wharton v. Barker*, 4 *K. & J.* 483, was such a case, and Vice Chancellor Wood held there that the use of the word "then", treated as an adverb of time, showed clearly the intention of the testator to fix the class to consist of those persons who on the death of the life tenant were the next of kin of the testator's wife, who corresponded with B. in the case supposed above. The decision in *Wharton v. Barker* furnishes rules of ascertainment of the persons entitled in the Nelson case. There a residue consisting of mixed estate was given in trust as to one moiety for his daughter Mary for life, with remainder to her children with cross-remainder, and in case both of said daughters died without children, or, leaving such, all should die under 21 years without issue, then it was directed that payment

be made of one moeity "unto the person or persons that shall
then be considered as my next of kin and personal representative
or representatives agreeable to the order of the statute of distri-
bution and the other moiety unto the person or persons that
shall then be the next of kin and personal representative or
personal representatives of my late wife Sarah, agreeable to the
order of the statute of distribution." The testator died in
1825, and at the date of his will, as also at his death, he had two
children only, Mary and Sarah. Sarah died in 1828 unmarried,
and Mary in 1851 without having had any issue, but her
husband, Litler, survived her. The Court held that the persons
entitled to the second moiety were those who at the death of the
surviving daughter were the next of kin, according to the statute,
of the testator's deceased wife, and, having regard to the juxta-
position of the bequests, that the persons entitled to the first
moiety were those who at the same period were the next of kin
of the testator according to the statute. As to the first moiety,
a gift to his own next of kin, Sarah having died before Mary, and
Litler, the husband of the latter being the personal representative
of both, as their executors or administrators, at the death of
the surviving daughter Mary, he took as such personal represen-
tative of both sisters the whole of that moiety. As to the second
moiety, a gift to the next of kin of the testator's deceased wife,
Sarah, living at her death, it was found that A. and B. were her
next of kin at the death of the surviving daughter and took her
share. If either A. or B. had been dead at the death of the
surviving daughter, that second moiety would have gone to the
executors or administrators of A. or B., respectively.

    Applying the principles of this case, which followed worthy
precedents, and has been followed since, we have these results in
construing Robert Nelson's will: There being a substitutional
gift to the heirs and representatives of nephews and nieces who
died between the time of the testator's death and the
time of division or distribution, viz., the death of the
testator's wife, the persons then (i. e., at the death of
the life tenant) to take as heirs and representatives of nep-
hews and nieces then dead are the persons answering the descrip-
tion of heirs and representatives of such nephews and nieces at

the death of each nephew or niece. By "heirs and repre-
sentatives," in this connection, is meant, not executors or
administrators of nephews and nieces dead at the time of the
death of the life tenant, but those persons who at the death of
each nephew and niece so dying were entitled to take the share
of such nephew or niece as personalty, according to the statute
of distribution of the State of Delaware. In view of the simil-
arity of the statutes of descent of intestate real estate and the sta-
tute of distribution of personalty, there is, as hereinbefore point-
ed out, no difference of result whether the word "heirs" is
given a technical meaning as "heirs at law," or is given a mean-
ing to correspond with the meaning of the word "representa-
tives," the other descriptive word used by the testator.
Therefore both words may be given the meaning of next of kin
or distributees, the subject-matter of the bequest being personal-
ty and not realty. In this connection it should be noted, of
course, that, as hereinbefore held, neither of the nephews and
nieces dying in the life of the testator had a devisable interest,
there being a substitutional gift to their heirs and representa-
tives respectively.

The result of this conclusion, applied to the facts here,
is that the share of each of the nine nephews and nieces who
died before the life tenant, Robert Nelson's widow, passed to
their respective distributees as of the time of their decease,
respectively, and, as to the shares of such distributees as sur-
vived their immediate ancestor (nephew or niece of the testator)
and died before the life tenant, such shares passed to their
respective executors or administrators. This is subject to the
rights, if any, of the husbands and wives of such deceased
nephews and nieces alive at the death of their respective spouses,
which question will be considered later on in this opinion.
For instance, inasmuch as at William Thorn's death he left four
children, three of whom died in the life of the life tenant, the
shares of these three children go at the death of the life tenant
to their respective executors or administrators, and not to their
children. So also the share of Elizabeth Barnholdt passed at
the death of the life tenant to the executor or administrator of
Elizabeth Barnholdt's mother, Eliza Callahan, and not to Eliza

Callahan's next of kin, her brothers and sisters and issue of her deceased brothers and sisters.

The sixth question considered was whether the widow of William Thorn, she being still alive, or the surviving husband of Elizabeth Winterbottom, he being still alive, are entitled to any share in the trust estate. Independent of the effect of language in a will showing in a controlling way the testator's intention, the authorities are conflicting upon the question whether a husband or a wife come within the description of "heirs and representatives" where the subject-matter of the bequest is personalty. In some states the word "heirs," as applied to succession of personal estate, means "next of kin," and the words "next of kin" denote blood relationship, and therefore excludes a widow and husband. The courts of other states and the English cases generally hold that the word means all the persons who take personalty under the statute of distribution, as in case of intestacy, including therefore a surviving husband and wife. In the case of *Tillman v. Davis*, 95 *N. Y.* 17, the cases on both sides are referred to and the conflicting character of the English decisions commented on. No attempt will be made to reconcile the cases or decide which class of cases should be followed, because there is in the will such evidence of intention as settles the proper interpretation of these words. There is in Delaware no controlling decision. The case of *Mason v. Baily*, 6 *Del. Ch.* 129, 14 *Atl.* 309, does not distinctly apply. There Chancellor Saulsbury held that a surviving husband was not entitled to a share or interest in a fund consisting of personalty only given to the "right heirs" of his wife in remainder after a life estate to her. But that decision, though illuminating, does not apply in construing the Nelson will, for in the case cited there was a direct gift to the "right heirs," and the Court very properly there held that those persons who answered that description were entitled as *personae designatae*. The case of *DeBeauvoir v. De Beauvoir*, 3 *H. L. Cas.* 524, relied on by the Court there, was also a direct gift, and not a substitutional gift, as was the gift in Robert Nelson's will. The administrator of the life tenant in *Mason v. Bailey* was also excluded from participation because not her "right heir," or *personam designatum*.

As Chancellor Saulsbury stated (*page* 148 *of* 6 *Del. Ch., page* 317 *of* 14 *Atl.*), there are a considerable number of cases of high authority which hold that, where the gift is to the heir or heirs by way of substitution for the original or preceding legatee, the word "heirs" is construed to mean distributees, if the subject-matter be personal estate, and therefore a surviving husband or wife of the first or preceeding legatee would receive the shares given them as in the case of intestacy.

But the testamentary intention of Robert Nelson was that the word "heirs and representatives" should mean next of kin, and not distributees. This is quite evident from the use of the word "ancestors." The heirs and representatives of such nephews and nieces as died after the testator's death and before the life tenant were to take such share or shares as their respective ancestors would have been entitled to receive if living. No one comes within the definition of "heirs and representatives" of nephews and nieces who cannot claim a nephew or niece as an ancestor. This means that the substitute must be of the blood of the preceeding legatee. Neither husband nor wife of a nephew or niece of the testator were his next of kin or of blood relationship, and therefore they must be excluded in seeking those indicated by "heirs and representatives" of nephew or niece surviving the testator and not the life tenant. It follows, then, that neither William Thorn's widow nor Elizabeth Winterbottom's surviving husband are entitled to any share of the fund.

It is unnecessary to consider whether husbands and wives of children of nephews and nieces dying before the life tenant take any share from their deceased spouses, because the shares of such children go to their executors or administrators, e. g., Margaret Bailey survived her father, William Thorn, and died before Nelson's widow, leaving a husband still alive, but her share goes to her executor or administrator immediately; and the same is true of Ellen Boggs, also a child of Willliam Thorn.

The conclusions finally reached by the Court are these:

1. That the learned Auditor was right in holding that the gift in remainder to the children of the testator's three sisters was a gift to those nine nephews and nieces, children of the three named sisters, and that they took at the death of the testator

each an undivided one-ninth interest in the residuary estate as personal property; the gift being to a class the members of which, living at the death of the testator, took *per capita* and not *per stirpes*, subject to the diminution of the shares by adding to the class of the nephews and nieces those children of the three named sisters who should be born after the death of the testator and in the life of the life tenant, but not subject to be increased by the death of any of such nephews or nieces after the death of the testator and during the life of the life tenant. The decision of the Court of Errors and Appeals in the *Kean Case* and other cases in Delaware control this Court in the case under consideration.

2. That the learned Auditor erred in allowing to the executors and administrators of such of the nine nephews and nieces as survived the testator and died in the life of the life tenant payment of the one-ninth share of each of those so dying, for the gift to the heirs and representatives of such nephews and nieces so dying was a substitutional gift, and upon the death of either of the nephews or nieces in the life of the life tenant, the share which the one so dying would have taken if living at the death of the life tenant passed by substitution to the person or persons who should be determined to be the heirs and representatives of the ones so dying, upon a proper construction of the controlling words of the will.

3. That the gift in remainder, being a gift of personalty because of the equitable and actual conversion of all the estate real and personal into money, was a gift by substitution to the next of kin or distributees of those of the nine nephews and nieces who died in the life of the life tenant, the words "heirs and representatives" being so construed.

4. That inasmuch as the persons to take the estate in remainder were not determinable until the expiration of the life estate by reason of the substitutional clause, the interests of those of the nine nephews and nieces who died before the life tenant were not devisable by them and did not pass under the will of either of them; but that each nephew and niece became a separate *stirps*, through whom, but not from whom, the shares which each would have been entitled on surviving the life

tenant passed to their next of kin or distributees respectively as though that one or more so dying had been possessed, at the time of his or her death, with a sum equal to an undivided one-ninth share of the estate of Robert Nelson as personalty. It results from this conclusion that the will of William Thorn, the son of Hannah Thorn, a sister of Robert Nelson, did not pass his interest or estate to the residuary legatee therein, or otherwise affect the transmission of his share to those who were held to be his heirs and representatives, meaning thereby his next of kin or distributees.

5. That the persons to take as "heirs and representatives" of each of the four nephews and nieces who survived the testator, and died in the life of the life tenant, are to be ascertained as of the time of the death of each nephew and niece respectively; and the persons so to take are those persons who would then have been entitled under the statute of distribution in Delaware to the distributive balance of the personal estate of each nephew or niece so dying; and in case any person who would then have been entitled, if then living, as heir and representative of a nephew or niece, be dead at the date of the distribution or division, viz., at the death of the life tenant, the share of the one so dying would now be payable to his or her executor or administrator and not to his or her children or next of kin. An executor or administrator so taking would not take as an "heir or representative" of a nephew or niece, but as the representative of an "heir or representative" of a nephew or niece.

6. That if any of the nine nephews or nieces left to survive them a husband or wife now living, then that they, the husband or wife, would not take as heirs or representatives of such nephew or niece the share to which they would have been entitled, or any portion thereof.

Applying the principles set forth in the foregoing conclusions, we have the following results:

The whole fund is to be divided into 216 parts.

William Thorn's interest passed by substitution, as follows: Six parts to the administrator of Margaret Bailey (a child of William Thorn), who died after her father; six parts to Emma

Boggs, only child of Ellen Boggs ( a child of William Thorn), the mother having died before her father; three parts each to William J. Thorn and Catharine Thorn, only children of Robert Joseph Thorn (a child of William Thorn), their father having died before his father; and two parts each to William Huffnickle, Charles Huffnickle and John Huffnickle, children of Hannah Huffnickle (a child of William Thorn), the mother having died before her father.

Robert Thorn's one-ninth passed to his two daughters, Sarah and Catharine. Sarah MacMullen, being still alive, is therefore entitled to twelve of said parts. Catharine McNeal having died before her father, her twelve parts are to be divided between her three children, Lizzie McN. Murray, Robert McNeal and Ellen McNeal, each of the latter taking four of said parts.

Elizabeth Barnholdt's one-ninth share passed to her mother, Eliza Callahan. Eliza Callahan survived her daughter, and, having died before the life tenant, the executor or administrator of Eliza Callahan is entitled to her share, being twenty-four of said parts.

Elizabeth Winterbottom's one-ninth passed to her three children, John, William and Percy, all of whom are still alive and each entitled to eight of said parts.

Mary Chidester's one-ninth passed to her three children, Ella Royer, William Chidester and Samuel Chidester, all of whom are now living and each entitled to eight of said parts.

Hannah T. Schell, Sarah Staley, Emma Lackey and Theodore Colwell are each entitled to twenty-four of said parts.

Let an decree be entered accordingly.